UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES W. BARTLETT, SR.,

                Plaintiff,

    -against-                                                      5:11-CV-0621 (LEK)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Currently before the Court is an appeal by Plaintiff James W. Bartlett, Sr. ("Plaintiff"), of a decision by the Commissioner of Social Security denying Plaintiff benefits. For the following reasons, the Commissioner's decision is affirmed.

**II.    BACKGROUND**

**A. Procedural History**

On September 8, 2008, Plaintiff filed applications for Social Security Disability ("SSD") benefits and Supplemental Security Income ("SSI"), alleging disability beginning May 23, 2008, due to Crohn's disease and depression. Dkt. No. 9-2[1] at 11.[2] Both claims were originally denied on November 17, 2008. Id. Soon thereafter, Claimant filed a timely written Request for Hearing. Dkt.

---

[1] Dkt. No. 9-2 comprises: (1) Appeals Council Denial ("Appeal Denial") at 1-4; (2) Request for Review of Hearing Decision/Order ("Req. for Review") at 5-6; (3) ALJ Hearing Decision ("ALJ Decision") at 7-20; and (4) Plaintiff's Transcript of Oral Hearing ("Pl. Tr.") at 21-40.

[2] All page numbers cited herein correspond to those electronically affixed to the top of each document by the Clerk of the Court.

No. 9-4 at 10-11; see 20 C.F.R. §§ 404.929, 416.1429. After due notice, Plaintiff appeared and testified at a hearing in Syracuse, New York, before Administrative Law Judge ("ALJ") Thomas Tielens. ALJ Decision at 11. At the hearing, Plaintiff was represented by counsel. Id. The ALJ issued a decision denying benefits on April 27, 2010. Id. A timely Request for Review was then filed with the Appeals Council. Req. for Review at 5-6. The Appeals Council denied Plaintiff's request. Id. Plaintiff subsequently appealed the decision by filing a Complaint with the Court on January 3, 2012. Dkt. No. 1 at 1.

**B. Factual History**

Plaintiff is a 43-year-old male with a tenth-grade education.[3] Dkt. No. 9-6 ("Disability Report") at 13. He has experience doing asbestos, hazmat, construction, welding, and auto-body work. ALJ Decision at 19, 26-27. Plaintiff alleges that his depression and Crohn's disease, a gastrointestinal impairment causing abdominal pain, are disabling. Dkt. No. 9-7[4] at 48. Plaintiff further alleges that his disability commenced on May 23, 2008, the date he underwent surgery for Crohn's disease. Discharge Summ. at 76. The procedure removed 29 centimeters of Plaintiff's small intestine, which his treating physician, Dr. Del Pino, explained to be an "extremely risky" attempt to obtain some relief. Id. at 79-80. Plaintiff "refused other options," including several

---

[3] Plaintiff was 38 years old at the time of his surgery and 40 years old at the time of the initial decision by the ALJ on this claim. ALJ Decision at 19.

[4] Docket Number 9-7 comprises: (1) Hospital Report from Oneida Healthcare with Plaintiff's Surgeon, Dr. Del Pino ("Dr. Del Pino Report") at 2-6; (2) Office Treatment Records from Oneida Healthcare Center ("Treatment Rs.") at 7-73; (3) Discharge Summary after Plaintiff's Surgery by Dr. Del Pino ("Discharge Summ.") at 74-103; (4) Medical Report by Plaintiff's Gastroentrologist, Dr. Ghandi ("Dr. Ghandi Report") at 104-09; (5) Physical RFC Assessment by M. Hessberger ("Hessberger Report") at 110-18; (6) Plaintiff's Medications between 5/1/09 - 11/19/09 ("Medications") at 120-121; and (7) Dr. Koss's Office Treatment Records ("Dr. Koss Report") at 122-7.

medications recommended by Dr. Del Pino.  Id. at 80.  Twelve days after his surgery, Plaintiff reported an improvement in his pain, appetite, and nausea.  Id. at 92.  Sometime thereafter, Plaintiff returned to work for two-and-a-half to five weeks.  He then stopped due to alleged pain and constant diarrhea.  Pl. Tr. at 29, 34; ALJ Decision at 13.  At that time he was prescribed hydrocodone, an opioid pain reliever, by Dr. Del Pino.  Pl. Tr. at 30; see also Medications at 120.  Plaintiff also testified that he struggled with depression following surgery.  Pl. Tr. at 38-39.

On November 12, 2008, State Agency Analyst[5] Hessberger ("Hessberger") performed a physical Residual Functional Capacity ("RFC") assessment for Plaintiff after reviewing his medical records.  Id. at 17.  Hessberger determined that based on Plaintiff's medical history, his age of 38 years, his education of 10 years, and his work experience, Plaintiff had the capacity to perform "light work" during the period in question, thereby precluding him from a disability determination.  See Dkt. No. 9-4 at 7; 20 C.F.R. §§ 404.1567(b), 416.967(b).  Specifically, Hessberger stated that Plaintiff could perform work "such as" a routing clerk, a sticker, or a cardboard inserter.  Dkt. No. 9-3 ("RFC Determination") at 2.

### C. Medical Evidence[6]

#### 1. Dr. Ghandi

Dr. Brett R. Ghandi ("Dr. Ghandi"), Plaintiff's treating gastroentrologist, examined Plaintiff on October 14, 2008, and noted that Plaintiff's "main complaint is pain."  Dr. Ghandi Report at 104.  Dr. Ghandi's report also stated that Plaintiff did not have diarrhea or bleeding and was "doing well,

---

[5] A State Agency Analyst creates a Residual Functional Capacity assessment to determine a plaintiff's disability status.  The RFC assessment is given to an ALJ to provide a review of a claimant's medical records and her vocational capacity.  See generally 20 C.F.R. § 404 subpt. P, app. 2.

[6] At the hearing, no physician testified for Plaintiff.

but was not taking his [anti-inflammatory] medication" and was experiencing pain as a result. Id. Dr. Ghandi concluded that Plaintiff had a recurrence of Crohn's disease because he was not taking his anti-inflammatory medication. Id. at 104-09. When asked, Dr. Ghandi refused to complete a medical-source statement regarding Plaintiff's functional limitations. Id. Moreover, he noted that Plaintiff did not have any weight loss, muscle weakness, or rashes, and that Plaintiff was noticeably anxious to get his Lortab.[7] Id. at 104. Dr. Ghandi explained to Plaintiff that he had never given a pain medication for Crohn's disease before in his life. Id. Instead, Dr. Ghandi prescribed anti-inflammatory medication to treat the problem at its source and relieve the pain Plaintiff was experiencing, not mask the pain as it got worse. Id. at 104-06.

### 2. Dr. Koss

The Record indicates that Dr. Koss, a primary care physician, began treating Plaintiff on January 13, 2009. Dr. Koss Report at 122. When Plaintiff came in for his first visit with Dr. Koss, he brought records from his previous primary care physician, but did not bring any records from Dr. Ghandi. Id. Even though Dr. Koss only saw Plaintiff for the first time that day, he completed a medical source statement on Plaintiff's ability to do work-related activities. Id. at 119. Dr. Koss also prescribed Lexapro for Plaintiff's alleged depression. Id. at 122. During the examination, Dr. Koss noted Plaintiff had "mild bloating" with "discomfort on light palpation" and no other physical abnormalities. Id. When Dr. Koss completed Plaintiff's SSD paperwork, he noted that Plaintiff was "severely limited" in several work-related abilities. Id. at 119. One month later, Dr. Koss noted that Plaintiff was "doing better with regards to depression." Id.

---

[7] Lortab is a narcotic pain medication that combines hydrocodone and acetaminophen. Hessberger Report at 17.

4

*3. Dr. Del Pino*

Dr. Alberto Del Pino ("Dr. Del Pino") performed colorectal surgery on Plaintiff on May 23, 2008. Dr. Del Pino Report at 2. Dr. Del Pino noted that Plaintiff had Crohn's disease and allegedly still experienced abdominal pain after the operation. Discharge Summ. at 75. The hospital report notes that Dr. Del Pino explained that "surgery was extremely risky," however, Plaintiff "refused" medications to treat his Crohn's disease. Id. at 74. Dr. Del Pino prescribed narcotic pain medication and Pentasa, an anti-inflammatory medication. Id. at 75. In a request dated October 2, 2008, Dr. Del Pino noted that Plaintiff "needed to be on long-term anti-inflammatory disease medication to maintain remission." Id. Dr. Del Pino did not complete SSD paperwork regarding Plaintiff's functional limitations. Id. at 74-103.

*4. Dr. Buchan*

Plaintiff was admitted to University Hospital in Syracuse, New York, on June 2, 2009, complaining of "stabbing" abdominal pain and bowel movements. Dkt. No. 9-8 at 2, 19. Plaintiff was treated with fentanyl, a narcotic pain medication. Id. at 19. On June 3, 2009, Plaintiff received a colonoscopy from Dr. Buchan, revealing *C. difficile* toxin.[8] Dr. Debra Buchan "noted that it was 'quite possible that [Plaintiff] acquired *C. difficile* from his daughter' since [Plaintiff's] daughter had been in and out of the hospital recently for her own gastrointestinal problems." Id. at 18. By the time Plaintiff was discharged on June 4, 2009, he was "eating a regular diet and was ambulating." Id. at 21.

---

[8] *C. difficile* is bacteria that causes diarrhea and other intestinal disease when competing bacteria are wiped out by antibiotics. MAYO CLINIC STAFF, MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH (MFMER) (2013), http://www.mayoclinic.com/health/c-difficile/DS00736.

*6. State Agency Analyst*

On November 12, 2008, a State Agency Analyst, M. Hessberger, completed an RFC assessment regarding Plaintiff after reviewing the Record. Hessberger Report at 111-12. Hessberger noted that there were significant gaps in Plaintiff's treatment notes and that Plaintiff's allegations of severe weight loss were not supported by "actual records." Id.

According to the RFC assessment, Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. Id. Additionally, Plaintiff had an unlimited capacity to push and pull; was able to occasionally climb ramps, stairs, and balance; and could frequently stoop, kneel, crouch, and crawl. Id. Hessberger also noted that Plaintiff retained "the capacity for light RFC, and a job in which accommodations would be made for [occasional] need for frequent use of toilet facilities, such as: Sticker, Routing Clerk, [or] Cardboard Inserter." Dkt. No. 9-3 at 2.

### III. STANDARD OF REVIEW

In reviewing a denial of disability benefits by the Commissioner, a court may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, a reviewing court must affirm the Commissioner's decision if the correct legal standards were applied and if substantial evidence supports the decision. Featherly v. Astrue, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011). Substantial evidence requires "more than a mere scintilla" of relevant evidence such that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot substitute its own judgment for that of the Commissioner. Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); see also Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). Thus, even if the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). The Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). "The [Commissioner's] finding will be sustained if supported by substantial evidence even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (internal citations omitted).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. This five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the

7

claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

20 C.F.R. §§ 416.920, 404.1520; Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). The Supreme Court affirmed the validity of this process in Bowen v. Yuckert. 482 U.S. 137, 140-42 (1987).

## IV. DISCUSSION

### A. The Commissioner's Decision

A claimant may request that the ALJ's decision be reviewed by the Appeals Council, but "[t]he dismissal of a request for Appeals Council review is binding and not subject to further review." Thus, upon dismissal, the decision of the ALJ becomes the Commissioner's final decision. 20 C.F.R. §§ 404.972, 404.967. In the present case, the Commissioner dismissed Plaintiff's Request for Review, thereby affirming the ALJ in full. Dkt. No. 1 at 1. In his decision, the ALJ reviewed the available medical records and found that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

In making his decision, the ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was "disabled." 20 CFR §§ 404.1520, 416.920. First, the ALJ determined that Plaintiff had not engaged in any substantial, gainful employment since May 23, 2008, the onset date of his alleged disability. ALJ Decision at 13. Second, the ALJ found that Plaintiff had a severe impairment, Crohn's disease. Id.; see also 20 C.F.R. §§ 404.1520(c), 416.920(a). The ALJ based his decision on the available medical evidence and the fact that the impairment "impose[d] more than slight limitations of function in the claimant's ability to perform basic work activities." ALJ Decision at 13-14. The ALJ found Plaintiff's alleged depression not to be a severe mental impairment. Id. In determining the severity of Plaintiff's depressive symptoms,

8

the ALJ applied the four criteria in § 12.00(C) of the Listing of Impairments.[9] 20 C.F.R. pt. 404, Subpt. P, app. 1, § 12.00(C).

In step three of his analysis, the ALJ concluded that although Plaintiff's Crohn's disease was considered a severe impairment, Plaintiff's condition in general was not an impairment that met or medically equaled one of the listed impairments in § 12.00(C). 20 C.F.R. §§ 404.1520(d), 404.1525-26, 416.920(d), 416.925-26. Furthermore, the ALJ concluded that because Plaintiff has the burden of proof for steps one through four of the disability analysis and could not provide sufficient evidence that his Crohn's disease met or equaled the specific clinical signs and diagnostic findings required in Listing 5.06, the ALJ had to determine whether Plaintiff retained the RFC to perform the requirements of his past relevant work or other work that might be available in the national economy. Req. for Review at 5; 20 C.F.R. 404 pt. P, app. 1, § 5.06.

The ALJ determined that Plaintiff's past relevant work in construction was "beyond his current residual functional capacity" but that he could still perform "light work."[10] ALJ Decision at 15. When assessing Plaintiff's symptoms and concluding that Plaintiff could perform light work, the ALJ followed the two-step sequential test to: (1) determine whether there are symptoms of an

---

[9] The four criteria used when assessing the severity of functional limitations imposed by medically determinable mental impairments are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C); 20 C.F.R. §§ 404.1520(c), 416.920(a).

[10] "'Light work' involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

underlying physical or mental impairment that can be reasonably accepted; and (2) "evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] ability to do basic work activities." ALJ Decision at 15-16. When evaluated in line with the available evidence, the ALJ found that Plaintiff's statements were "only partially credible" and gave more weight to the RFC analysis done by Hessberger. Id. at 18; see also 20 CRF §§ 404.1567(b), 416.967(b).

When "considering [Plaintiff's] age, education, work experience, and [RFC], [the ALJ determined that] there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." ALJ Decision at 19. Also, "if the [Plaintiff] had the [RFC] to perform the full range of light work, considering [Plaintiff's] age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.18." Id. at 20; see also 20 C.F.R. § 404.1569. As such, the ALJ concluded that at no time through the date of the decision was Plaintiff under a "disability." Pl. Tr. at 20; see also ALJ Decision at 7-19. When the Appeals Council denied Plaintiff's Request for Review, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. §§ 404.972, 404.967.

### B. Plaintiff's Claims

Plaintiff advances four arguments as to why the Commissioner's decision should be remanded for further administrative proceedings. Pl. Br. at 24. First, Plaintiff contends that the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's credibility. Id. Second, Plaintiff asserts that the ALJ erred when he failed to find the Plaintiff's depression severe. Id. at 3. Third, Plaintiff argues that the ALJ's Residual Functional Capacity finding is not supported by substantial evidence and is the product of legal error. Id. Fourth, Plaintiff argues that the ALJ's

10

determination at step five is not supported by substantial evidence and is the product of legal error. Id. The Court addresses each of these claims separately.

### 1. *Plaintiff's Credibility*

The ALJ properly considered Plaintiff's credibility. The ALJ stated that he found Plaintiff's symptoms "only partially credible to the extent that they [were] consistent with the above listed [RFC] assessment." ALJ Decision at 18. He also explicitly noted the absence of medical evidence to support Plaintiff's assertions and provided nearly six pages of discussion of the medical evidence and Plaintiff's reported symptoms. ALJ Decision at 14-19. Plaintiff argues that the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's credibility "because Plaintiff's statements [were] inconsistent with the ALJ's own RFC finding." Pl. Br. at 17. However, the ALJ's decision was based on substantial evidence and was consistent with the objective medical evidence in the Record. See ALJ Decision at 7-19. See generally Dkt. No. 9-7.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV. 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). The ALJ's credibility assessment is entitled to great deference if it is supported by substantial evidence. Murphy v. Barnhart, No. 00Civ.9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). The ALJ must first determine whether, based upon the objective medical evidence, a claimant's medical impairments "could

reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ need only evaluate the intensity, persistence, and limiting effects of the claimant's symptoms and determine the extent to which they limit that claimant's capacity to work. See id.

If the objective evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the claimant's subjective complaints by considering the record in light of the following factors: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. Id. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Plaintiff argues that "the ALJ erred by considering the consistency of Plaintiff's statements with the ALJ's own RFC finding instead of evaluating all of the required factors." Pl. Br. at 20. However, the ALJ clearly notes that he examined the record thoroughly and only gave significant weight to the RFC because it was "consistent with the longitudinal medical evidence in the record." ALJ Decision at 19. In regard to Plaintiff's allegations of depression, because the medical evidence does not substantiate the existence of such an impairment and because of his consideration and discussion of factors listed *supra*, the ALJ's decision is supported by substantial evidence and entitled to great deference. 20 C.F.R. § 404.1529(c)(3).

In addition, the ALJ may look at whether Plaintiff followed his prescribed course of

12

treatment or was justified in failing to do so. SSR 96-7p, 1996 WL 374186; Rivera, 717 F.2d at 725. The record indicates that Plaintiff inconsistently took the anti-inflammatory medication he was prescribed by Dr. Ghandi, who opined that Plaintiff was "experiencing pain as a result." ALJ Decision at 16. At no time did Plaintiff or anyone else provide any justification for why Plaintiff was not taking his anti-inflammatory medication. Id. at 17.

The ALJ also found that Plaintiff's allegations of pain to be "only partially credible" because Plaintiff failed to substantiate his subjective complaints and therefore his allegations could not be given controlling weight. ALJ Decision at 18; SSR 96-3p, 1996 WL 374181 (July 2, 1996); SSR 96-4p, 1996 WL 374187 (July 2, 1996). Similarly, the ALJ questioned the credibility of Plaintiff's allegations of significant weight loss frequency of bowel movements. ALJ Decision at 18. Plaintiff alleged 10-12 bowel movements per day. Pl. Tr. at 34. However, the available medical evidence does not support this claim. See generally Dkt. No. 9-7. Plaintiff also claimed that he experienced severe weight loss, dropping to 140 pounds. Pl. Tr. at 27. During an office visit in 2006 with Dr. Lalor, Plaintiff's weight was recorded at 167.5 pounds. Treatment Rs. at 8. On June 7, 2007, Plaintiff's weight was up to 186 pounds. Id. at 14. By June 15, 2009, Plaintiff's weight was recorded at 191 pounds, "which [was] down 5 pounds." Dr. Koss Report at 126.

The ALJ properly considered Plaintiff's credibility. The ALJ's decision was based on substantial evidence and was consistent with the objective medical evidence in the Record. See ALJ Decision at 7-19. See generally Dkt. No. 9-7.

### 2. ALJ's Severe-Impairment Determination

The ALJ correctly ruled that Plaintiff's depression was not severe. At step two of the evaluation process, the ALJ must determine whether a plaintiff has a severe impairment that

13

significantly limits his physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities refer to "the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b); see also Bowen, 482 U.S. at 141. Examples include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting. Id.

A plaintiff bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." McConnell v. Astrue, No. 03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008) (citing Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

The ALJ noted that Plaintiff's alleged depression was not considered a severe mental impairment within the meaning of the regulations. ALJ Decision at 15, see also 20 C.F.R. §§ 404.1520(a)(1), 416.920a(d)(1). Furthermore, the ALJ determined that there was "no evidence in the record that [Plaintiff] [had] ever sought mental health counseling or undergone outpatient treatment for a mental impairment." ALJ Decision at 14. Failing to seek treatment for a condition "seriously undermines any claim of inability to perform work-related activities due to this condition." See Arone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989); accord Navan v. Astrue, 303 Fed.

App'x 18, 20 (2d Cir. 2008).

The ALJ also determined that Plaintiff's depression was not a severe impairment because Plaintiff had largely relied on Dr. Koss's report. ALJ Decision at 15. However, as discussed in more detail *supra*, the ALJ "gave very little weight to the report that Dr. Koss completed for [Plaintiff]." Despite a lack of evidence in the record regarding Plaintiff's alleged mental impairment, the ALJ still considered the four broad functional areas used for evaluating mental disorders listed *supra*. 20 C.F.R. subpt. P, app. 1, pt. 404, § 12.00(C). Because the ALJ found "no more than 'mild' limitations in any of the first three functional areas and 'no' episodes of decompensation . . . in the fourth area, [Plaintiff] does not have a 'severe' mental impairment." ALJ Decision at 15.

When viewed in conjunction with the other medical evidence in the record, the ALJ properly concluded that Plaintiff "has the ability to perform the mental demands of competitive work on a sustained basis." Id. Plaintiff did not meet his burden of showing that his depressive symptoms severely impaired his ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). Therefore, the ALJ's finding that Plaintiff's depression was not severe is based on substantial evidence. ALJ Decision at 19.

### 3. RFC Determination

At step four of the five-step analysis, the ALJ must determine Plaintiff's RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (e); id. § 416.920(e). RFC is:

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.

Melville 198 F.3d at 52 (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)).

In assessing the RFC of an individual, the ALJ must consider the individual's impairment "and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the individual] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). Accordingly, the ALJ must assess the RFC based on all relevant and medical evidence in the record. Id. §§ 404.1520(e), 404.1545(a)(3). Ultimately, the RFC is used to determine whether an individual can perform past work. 20 C.F.R. § 404.1545(a)(5)(i). If, however, the ALJ concludes that the individual cannot perform past work, then the ALJ utilizes the RFC to evaluate step five to determine whether the individual can adjust to other work that exists in the national economy. Id. § 404.1545(a)(5)(ii).

At step five, the burden of proof shifts to the Commissioner to show "there is other gainful work in the national economy [which] the claimant could perform." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). The ALJ's determination at step five consists of two parts: first, assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience; and second, determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983). Here, the ALJ determined that Plaintiff

> has the [RFC] to perform light work[,] . . . can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in a eight-hour workday, and sit for about six hours in an eight-hour workday. In addition, [Plaintiff] can understand and perform simple tasks (both independently and with supervision), regularly attend to a routine and maintain a schedule, learn simple new tasks with appropriate instruction, and interact appropriately with others.

ALJ Decision at 15; see 20 C.F.R. §§ 404.1567(b), 404.967(b). Additionally, based on Plaintiff's RFC, age, education, and work experience, the ALJ determined that there are jobs that exist in the

national economy that Plaintiff can perform. ALJ Decision at 19; RFC Determination at 2.

Plaintiff raises two primary arguments relating to the RFC determination: (1) the ALJ improperly afforded significant weight to State Agency Analyst Hessberger; and (2) the ALJ failed to give controlling weight to the opinions of treating physician Dr. Koss. Pl. Br. at 13-15. As to Plaintiff's first argument, the ALJ did not err in affording significant weight to Hessberger's RFC assessment because the ALJ "'evaluated and considered' Hessberger's assessment 'in conjunction with other relevant evidence.'" Napierala v. Astrue, No. 07-CV-0706, WL 4892319 (W.D.N.Y. Dec. 11, 2009). The ALJ stated that he gave significant weight to the RFC "because it is based on a review of [Plaintiff's] medical records and is consistent with the longitudinal medical evidence in the record." ALJ Decision at 19. Therefore, the ALJ did not improperly afford significant weight to Hessberger's RFC assessment.

As to Plaintiff's second argument, the ALJ's decision to not give controlling weight to the opinion of treating physician Dr. Koss is supported by substantial evidence. Under the "treating physician rule," the ALJ must give controlling weight to a treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.[11] 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Carter, 221 F.3d 126, 134 (2d Cir. 2000). In evaluating whether a treating physician's opinion should be given controlling weight, an

---

[11] Generally, this is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment." 20 C.F.R. § 404.1527(c)(2). "Essentially, the physicians that are engaged in the primary treatment of a plaintiff are given more deference. However, . . . the treating physician rule need not be applied if the treating physician's opinion is inconsistent with opinions of other medical records." Goodnough v. Comm'r of Soc. Sec., 07-CV-0469, 2013 WL 209471, at *4 (N.D.N.Y. Jan. 17, 2013) (Kahn, J.) (internal citations omitted); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).

17

ALJ must consider various factors including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2); Shaw, 221 F.3d at 14 (quoting Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)).

The ALJ "gave very little weight to the report that Dr. Koss completed for [Plaintiff]" on January 13, 2009, because the report was based on Plaintiff's assertions and subjective complaints of depression on the first day Dr. Koss met Plaintiff. ALJ Decision at 15. An opinion by a physician who had examined a plaintiff only "once or twice" is "not entitled to the extra weight of that of a treating physician." Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983); accord Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011); see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (finding that frequency of examination is one factor to be considered when weighing a medical opinion.)

When viewed in conjunction with the other medical evidence in the record, the ALJ properly concluded that Plaintiff "has the ability to perform the mental demands of competitive work on a sustained basis." ALJ Decision at 15. Additionally, the limitations set forth in Dr. Koss's disability evaluation were inconsistent with other evidence in the Record including the opinions of other physicians that Plaintiff saw regularly. See 20 C.F.R. § 404.1527(d)(2); Halloran, 362 F.3d at 31-32. Because Dr. Koss completed Plaintiff's SSD paperwork on the first day he met Plaintiff, Dr. Koss did not have the "detailed, longitudinal background of Plaintiff's medical history" that would warrant giving his medical opinion such deference. 20 C.F.R. § 404.1527(c)(2). Furthermore, Plaintiff did not meet his burden in showing that his depressive symptoms severely impaired his

ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c)**.** Accordingly, the ALJ properly afforded Dr. Koss's opinion less than significant weight and correctly ruled that Plaintiff's depression was not severe. ALJ Decision at 19.

### 4. *ALJ's Step-Five Determination*

Contrary to Plaintiff's argument, the ALJ's determination at step five was supported by substantial evidence and was not the product of legal error. As is discussed *supra*, the ALJ's step five determination consists of two parts. The ALJ met his burden in step five, having considered Plaintiff's "age, education, work experience, and [RFC]" when determining that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." ALJ Decision at 19; 20 C.F.R. §§ 404.1569, 404.1569(a).

Plaintiff argues that the ALJ erred in relying solely on the Medical-Vocational Guidelines and therefore his decision is not supported by substantial evidence. Pl. Br. at 23-24. However, in making his determination the ALJ considered Plaintiff's RFC, age, education, and work experience *in conjunction with* the Medical-Vocational Guidelines and Plaintiff's entire medical record, ultimately concluding that Plaintiff can perform jobs exist in significant numbers in the national economy. ALJ Decision at 20; 20 C.F.R. §§ 404.1569, 404.1569(a). Moreover, because Plaintiff is capable of performing "light work," the ALJ cannot make a determination that he is disabled. ALJ Decision at 20; 20 C.F.R. § 416.969.

Plaintiff argues that his frequent use of the bathroom would preclude him from gainful employment; however, this issue was addressed in Hessberger's RFC assessment and considered by the ALJ in his determination. RFC Determination at 2; ALJ Decision at 16, 18. As noted by Hessberger, the jobs listed that exist in significant numbers in the national economy that Plaintiff

can perform are ones in which Plaintiff's "need for frequent use of toilet facilities" would be accommodated. RFC Determination at 2. See generally Dkt. No. 9-2. Because the ALJ relies on "more than a mere scintilla" of relevant evidence which "a reasonable mind might accept as adequate to support a conclusion," the ALJ's determination at step five is supported by substantial evidence and is therefore not the product of legal error. Richardson v. Perales, 402 U.S. 389, 401 (1971).

V.    **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **AFFIRMED;** and it is further

**ORDERED**, that the Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED:    July 24, 2013

        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge